UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEJANDRA PEREZ, as Administrator of the Estate of CARLOS PEREZ, <br><br> Plaintiff, <br><br> vs. <br><br> TOWN OF CICERO, CICERO POLICE DEPARTMENT, RAMON PORTILLO, RAFAEL GUERRERO, and EDDIE PEREZ, <br><br> Defendants. | 06 C 4981 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alejandra Perez, as administrator of the estate of her son, Carlos Perez, filed this suit against the Town of Cicero, the Cicero Police Department, and three John Doe police officers, alleging violations of federal and state law in connection with Carlos' death on September 14, 2005. The Town of Cicero was dismissed due to Plaintiff's failure to allege a municipal policy or custom, and the Cicero Police Department was dismissed because it is not a legal entity that can be sued. Doc. 31 (Andersen, J.). Plaintiff filed an amended complaint naming Cicero police officers Ramon Portillo, Rafael Guerrero, and Eddie Perez; the amended complaint sets forth a Fourteenth Amendment claim under 42 U.S.C. § 1983 alleging deliberate indifference to Carlos' medical needs and a state law claim for "willful and wanton conduct." Doc. 35. The court granted Plaintiff's motion to voluntarily dismiss Officers Portillo and Guerrero, Doc. 66 (Cox, M.J.), which left only the claims against Officer Perez. Officer Perez has moved for summary judgment. The motion is granted.

**Background**

The facts are set forth as favorably to Plaintiff as the record permits. Between 5:30 and 6:00 a.m. on September 14, 2005, officers from the Cicero Police Department were dispatched to Plaintiff's home in response to a call regarding a domestic disturbance between Carlos and his brother, Jose Perez. Doc. 96 at ¶¶ 6, 16; Doc. 106 at ¶¶ 6, 16. Three officers eventually arrived at the scene: Officer Perez and non-defendants Robert Gordon and Robert Richert. Doc. 96 at ¶ 7; Doc. 106 at ¶ 7. By the time Officer Perez arrived, the situation was "calmed down"; there were no signs of violence or a struggle, and Carlos was "calm and softspoken" and not making threats to anyone. Doc. 96 at ¶¶ 8, 10; Doc. 106 at ¶¶ 8, 10. Significantly for present purposes, Carlos "made no mention of suicidal thoughts" and "did not appear to be suicidal." Doc. 96 at ¶ 11; Doc. 106 at ¶ 11. That said, Carlos "was saying odd things, not making sense, using curse words and speaking to himself," and "was not acting like a person in control of himself." Doc. 106 at ¶ 9.

Members of Carlos' family told the officers that Carlos needed help and asked them to call an ambulance so that he could be taken to a hospital. Doc. 106 at ¶ 11. The officers did not call an ambulance, and neither did members of Carlos' family. Doc. 96 at ¶ 12; Doc. 106 at ¶¶ 11-12, 20; Doc. 110 at ¶ 20. Jose declined to sign a complaint against Carlos. Doc. 96 at ¶ 13; Doc. 106 at ¶ 13. The officers nonetheless took custody of Carlos because they suspected that he was the "Carlos Perez" wanted on a warrant from California. Doc. 106 at ¶ 14. Carlos was handcuffed, taken from the house, and placed in a patrol car. *Id*. at ¶ 15. It turned out that Carlos had no active warrants, so he was released moments later. Doc. 96 at ¶¶ 14, 16; Doc. 106 at ¶¶ 14, 16.

Neither Officer Perez nor the two other officers communicated or interacted with Carlos after his release. Doc. 96 at ¶ 16; Doc. 106 at ¶ 16. Later that morning, while no longer in custody, Carlos walked onto the train tracks and was struck and killed by a train in an incident later ruled a suicide. Doc. 96 at ¶ 17; Doc. 106 at ¶ 17. Carlos had cocaine and metabolized cocaine in his blood at the time of his death. Doc. 106 at ¶ 19; Doc. 110 at ¶ 19.

Cicero police had responded to calls from Plaintiff's residence on two prior occasions: May 29, 2005, and July 30, 2005. Doc. 96 at ¶ 18; Doc. 106 at ¶ 18. During the May 29 episode, Carlos was agitated, angry and shouting, and told Officer Portillo (one of the officers named in the amended complaint but later dismissed) that he wanted Portillo's gun to shoot himself. *Ibid*. For the safety of Carlos and the officers, Carlos was handcuffed and the officers called an ambulance that transported him for evaluation. *Ibid*. Officer Perez was not involved in the May 29 or July 30 incidents and had no knowledge of them on September 14, the date of the incident underlying this case. Doc. 96 at ¶ 19; *see* Doc. 106 (in which Plaintiff fails to offer any response to ¶ 19 of Officer Perez's Local Rule 56.1(a) statement).

One additional factual issue will be addressed before proceeding. In her brief opposing summary judgment, Plaintiff asserts that Officer Perez told Carlos upon releasing him that he could not return home. Doc. 105 at 2, 3-4. This factual assertion will not be considered for two separate and independent reasons. First, the fact is not included either in Plaintiff's Local Rule 56.1(b)(3)(A)-(B) response to Officer Perez's Local Rule 56.1(a)(3) statement or in her Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 106. Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion. *See Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting

additional facts to the district court"); *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)[] statement of additional facts"); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). Second, even putting aside Local Rule 56.1, the record citations identified by Plaintiff—page 20 of Maria Perez's deposition testimony, and the CFS Report of September 14, 2005—do not support the factual proposition that Officer Perez told Carlos that he could not return home. Plaintiff did not include page 20 of Maria Perez's deposition in the record. Doc. 107 at 35-43 (reproducing pages 1-2, 12, 14, 16-19, and 23 of Maria Perez's deposition). Neither did Officer Perez. Doc. 96-1 at 66-73 (reproducing pages 1, 9-10, 12, 16-18, and 22 of Maria Perez's deposition). And while the CFS Report is included in the record, it does not provide any information as to what Officer Perez might have told Carlos when releasing him from custody. Doc. 107 at 55-56.

## Discussion

**I.     Fourteenth Amendment Claim**

The amended complaint purports to state a Fourteenth Amendment due process claim against Officer Perez for deliberate indifference to Carlos' medical needs. Doc. 35 at ¶¶ 34-36. The pertinent paragraph of amended complaint alleges that Officer Perez was "aware of but deliberately, willfully, and wantonly ignored the obvious serious mental health needs of Carlos and his substantial risk of serious injury and death, and purposely neglected and failed to take appropriate steps to protect him." *Id*. at ¶ 35. Officer Perez's summary judgment motion sought judgment on what he had every reason to believe was a due process claim premised on a

deliberate indifference to medical needs theory. Doc. 95 at 3-12. In her opposition brief, however, Plaintiff switched gears, defending her due process claim not under a deliberate indifference theory, but on the "state-created danger" exception to *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). Doc. 105 at 3-7. In so doing, Plaintiff forfeited her due process claim insofar as it rests on a deliberate indifference to medical needs theory. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (party forfeits arguments that are not raised in the party's brief opposing summary judgment); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (claim deemed abandoned where the plaintiff "failed to delineate his negligence claim in his district court brief in opposition to summary judgment").

The deliberate indifference theory fails on the merits in any event. The court will accept the amended complaint's implicit submission that Carlos, during his brief time in police custody, was a pretrial detainee protected by the Fourteenth Amendment. To prevail on a Fourteenth Amendment deliberate indifference claim, the plaintiff "has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to [his] health or safety." *Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (brackets in original, internal quotation marks omitted). To satisfy the second element of this claim in the context of a suicide, Plaintiff must demonstrate that Officer Perez: (1) subjectively knew [Carlos] was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) (internal quotation marks omitted).

No reasonable juror could find that Officer Perez subjectively knew that Carlos was at substantial risk of committing suicide, let alone that he intentionally disregarded that risk. It is undisputed that on the morning in question, Carlos made no mention of suicidal thoughts and did

not appear to be suicidal. It is further undisputed that Officer Perez did not know that Carlos had told Officer Portillo during the May 29 incident that he wanted Portillo's gun to shoot himself. That Carlos behaved strangely in front of Officer Perez—saying odd things, not making sense, using curse words, speaking to himself, and not acting like a person in control of himself—did not imbue Officer Perez with the subjective knowledge that Carlos was a suicide risk. The Seventh Circuit has held that "strange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk." *Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003) (internal quotation marks omitted); *see also Jutzi-Johnson v. United States*, 263 F.3d 753, 757 (7th Cir. 2001) ("bizarre behavior and suicidal behavior are different, and there is no evidence that suicidal tendencies can be inferred from the kind of behavior that [decedent] exhibited"); *Estate of Novack v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) ("Mere knowledge that an inmate is behaving violently or 'acting in a "freaky" manner' is not sufficient to impute awareness of a substantial risk of suicide.") (internal quotation marks omitted). In *Collignon v. Milwaukee County*, 163 F.3d 982 (7th Cir. 1998), the Seventh Circuit went so far as to hold that "[p]lacing a pre-trial detainee on some level of suicide watch, even the highest level, does not demonstrate a subjective awareness of a substantial risk of imminent suicide." *Id*. at 990. Given these precedents, Officer Perez cannot possibly be found to have had a subjective awareness of the risk that Carlos would commit suicide upon his release. It follows that Plaintiff has no viable Fourteenth Amendment deliberate indifference to medical needs claim against Officer Perez.

As it happens, any claim Plaintiff might have had concerning Officer Perez's alleged failure to properly handle Carlos' medical needs arose from the Fourth Amendment, not the Fourteenth. In *Williams v. Rodriguez*, *supra*, the Seventh Circuit explained that "the Fourteenth

Amendment's due process protections only apply to a pretrial detainee's confinement conditions after he has received a judicial determination of probable cause. Claims regarding conditions of confinement for pretrial detainees … who have not yet had a judicial determination of probable cause (a *Gerstein* hearing) are instead governed by the Fourth Amendment and its objectively unreasonable standard." 509 F.3d at 403 (citing *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006)); *see also Ortiz v. City of Chi.*, __ F.3d __, 2011 WL 3841019, at *5 (7th Cir. Aug. 25, 2011); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 503 (7th Cir. 2010). Because Carlos did not receive a judicial determination of probable cause, the Fourth Amendment governs Plaintiff's medical treatment claim. Plaintiff forfeited any Fourth Amendment claim by not mentioning, let alone pressing, a Fourth Amendment theory in her brief. *See Williams*, 509 F.3d at 403 (finding forfeiture under materially identical circumstances).

As noted above, Plaintiff has recast her due process claim under the "state-created danger" theory. Interpreting the Due Process Clause, *DeShaney* established the general rule "that a public employee who knows about a danger need not act to avert it." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The state-created danger theory carves an exception for circumstances where the public employee "is responsible for creating the peril that creates an occasion for rescue, as when, having arrested a drunk driver, [a police] officer removes the key from the ignition of his car, as a result stranding the passengers late at night in an unsafe neighborhood and does nothing to protect them." *Ibid*. (brackets in original, internal quotation marks omitted). The factual predicate of Plaintiff's due process claim is that Officer Perez placed Carlos in danger by removing him in handcuffs from his home, placing him in a patrol car, and then, moments later, despite his erratic though calm behavior, releasing him outside the

family home without calling an ambulance despite his family's request that the officers do so. Doc. 105 at 2-5.

According to the Seventh Circuit, a due process plaintiff proceeding under the state-created danger theory must demonstrate three things:

> First, in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience.

*King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007) (citations omitted). No reasonable jury could find that Officer Perez's behavior satisfies the third element, that it "shock the conscience." The Seventh Circuit has held that the "shock the conscience" inquiry in state-created danger cases is equivalent to a deliberate indifference inquiry. *See Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599 (7th Cir. 2008) ("The third principle, as [*King*] goes on to explain, is a reminder that liability for a constitutional tort requires proof that the defendant acted (or failed to act) not merely negligently but recklessly (equivalently, with 'deliberate indifference' to the risk of harm that he was creating)."); *King*, 496 F.3d at 819 ("we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual"). As shown above, because the undisputed facts show that Officer Perez was not subjectively aware of the risk that Carlos would commit suicide upon his release from custody, no reasonable juror could find that Officer Perez exhibited deliberate indifference. And because Officer Perez was not deliberately indifferent, his conduct cannot possibly be found conscience shocking, which defeats Plaintiff's state-created danger theory as a matter of law.

*See Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 710 n.10 (7th Cir. 2002) (in state-created danger case, noting that "deliberate indifference [is] necessary to create constitutional liability" and affirming summary judgment where the defendant "had no knowledge that [the decedent] had threatened suicide in the past" and where "there is no evidence that [the decedent] had threatened suicide in the presence of [the defendants]").

Nor could any reasonable jury find that Plaintiff satisfied the first element of a state-created danger claim: that Officer Perez created or increased the risk that Carlos would commit suicide. Officer Perez certainly did not *create* that risk, as the record indisputably shows Carlos' suicidal tendencies predated the events of September 14, 2005; the most Plaintiff can hope to show is that Officer Perez *increased* the risk of suicide. On that point, the Seventh Circuit has cautioned "that 'create *or increase*' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect. If all that were required was a causal relation between inaction and harm, the rule of *DeShaney* would be undone, since, had it not been for the state's inaction in *DeShaney*, there would have been no injury." *Sandage*, 548 F.3d at 599 (citation omitted).

Given the undisputed evidence, Plaintiff could establish a causal relationship, and nothing more, between Officer Perez's conduct and Carlos' suicide—if Officer Perez had called an ambulance, Carlos would not have had the opportunity to walk to the railroad tracks. That is not enough under governing precedent to show that Officer Perez increased the risk of suicide. The point is illustrated by *Collignon v. Milwaukee County*, *supra*, an analogous suicide case. After the decedent in *Collignon*, a 28-year-old man suffering from paranoid schizophrenia, left his parents' home unannounced, the parents sought help from the local police department, telling the officers about his mental health history and strange behavior. 163 F.3d at 985-86. The

police found the decedent, took him into custody, and released him at 1:30 a.m. Later that day, the decedent left his parents' home again and this time committed suicide. *Id*. at 986. The parents sued under a state-created danger theory, alleging that although they informed the officers about the decedent's "bizarre" and "suicidal" behavior and "requested that [the decedent] be taken into custody immediately for the purpose of initiating emergency detention procedures," the officers released the decedent without first obtaining treatment. *Id*. at 991. The officers' conduct, the parents charged, "exposed [the decedent] to a greater risk of suicide" within the meaning of the state-created danger line of cases. *Id*. at 992.

The Seventh Circuit held that the parents had no viable due process claim. Relying on *DeShaney*, the court observed that:

> [A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. Thus, the plaintiffs cannot base their claims on the assertion that [the defendants] had an obligation to stop [the decedent] from committing suicide once he had been released from the jail. Similarly, the plaintiffs cannot claim that the … defendants should have involuntarily committed [the decedent] to a mental health facility: Due process protects people from being unlawfully restrained; it provides no right to be restrained, lawfully or otherwise.

*Id*. at 987 (internal quotation marks and citations omitted). Addressing whether the officers had increased the risk that the decedent would commit suicide, the court held: "It is certainly possible that custody, even when quite temporary, is stressful for mentally ill persons like [the decedent]. But temporarily detaining someone in [the decedent's] position does not expose him to an 'incremental risk' that must then be ameliorated." *Id*. at 992. And noting that the plaintiffs sought "to expand the rule that the state must provide medical treatment to pre-trial detainees into a rule imposing an obligation to provide medical treatment whenever the police interact with

a person who turns out to have a chronic mental illness, no matter how brief that interaction," the court held that due process imposes no such rule. *Id*. at 993.

To the same effect is *Martin v. Shawano-Gresham School District*, *supra*, a case where the plaintiffs' decedent, a thirteen-year-old girl, was suspended from school for possessing a cigarette on school grounds and committed suicide after returning home later that day. 295 F.3d at 704-05. The plaintiffs sued school officials on a state-created danger theory, alleging that they "rendered [the decedent] more vulnerable to the risk of suicide by suspending her from school" and then failed "to take affirmative steps to protect [her] by, for instance, providing her with counseling or holding her at school until her parents could pick her up." *Id*. at 708-09. Relying on *Collignon*, the Seventh Circuit rejected that claim: "In *Collignon*, the state did not create or increase the risk of suicide by arresting [the decedent there], even where the arrest caused severe emotional distress. So too, here the school did not create or increase a risk to [the decedent] by suspending her from school, even if that action caused severe emotional distress." *Id*. at 709-10. The court added that the school officials did not "use[] their authority to create an opportunity that would not otherwise have existed for the [decedent's] [acts] to occur. Rather, the school relinquished control of [the decedent] at the end of the school day, just as it would have done had she not been suspended." *Id*. at 711 (third brackets in original, citation omitted).

As in *Collignon* and *Martin*, Officer Perez's actions in removing Carlos from home and releasing him moments later without calling an ambulance did not increase the risk (as the term is understood by the state-created danger cases) that he would commit suicide. Having determined that Carlos had no outstanding warrants, and after Carlos' brother declined to sign a complaint (which would have resulted in Carlos being placed in custody), Officer Perez released Carlos outside the family home. To impose liability on Officer Perez in this situation would be

-11-

incompatible with the specific holdings of *Collignon* and *Martin*, and also with the general principles underlying the state-created danger exception to *DeShaney*.

Even if Plaintiff somehow could overcome these two hurdles to her state-created danger claim—that Officer Perez's actions did not shock the conscience, and that Officer Perez did not create or increase the risk of Carlos committing suicide—Officer Perez would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). To remove from Officer Perez from the shield of qualified immunity, the constitutional right that he allegedly violated must have been clearly established as of September 2005 "in a particularized sense" and not merely "at a high level of generality." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (internal quotation marks omitted). "The basic question is whether the state of the law at the time that [Officer Perez] acted gave him reasonable notice that his actions violated the Constitution." *Ibid*.

Officer Perez had no such notice. When Officer Perez encountered Carlos in September 2005, there existed at a high level of generality a right to state protection where "the state affirmatively places the individual in a position of danger the individual would not have otherwise faced." *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997) (citing *DeShaney*, 489 U.S. at 199-202). An example is provided by a case Plaintiff cites, *Munger v. City of Glasgow Police Department*, 227 F.3d 1082 (9th Cir. 2000), where the Ninth Circuit held that these facts gave rise to liability on a state-created danger theory:

> The officers affirmatively ejected [the decedent] from a bar late at night when the outside temperatures were subfreezing. They knew that [the decedent] was wearing only a t-shirt and jeans, was intoxicated, was

> prevented by the officers from driving his truck or reentering Stan's Bar, and was walking away from the nearby open establishments. Furthermore, the fact that the officers went looking for [the decedent] (or so claim), demonstrates that they were aware of the danger that he was in. It would seem indisputable, under this version of the facts, that the officers placed [decedent] in a more dangerous position than the one in which they found him.

*Id*. at 1087 (internal quotation marks omitted). As of September 2005, the Seventh Circuit had set forth these additional examples of viable state-created danger claims:

> Although we acknowledged in *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) that the state's placement of an individual in harm's way can result in actionable constitutional claims, cases in which we have either found or suggested that liability attaches under the 'state-created danger' exception are rare and often egregious. For example, in *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), we upheld a jury verdict against a police officer who allowed an informant's tape to be released despite his knowledge that the tape's release would result in heightened danger to the informant, who was ultimately killed. *Id*. at 520. In *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), which involved death and serious injury due to a car crash, we stated that '[p]olice officers who remove sober drivers and leave behind drunk passengers with keys may be said to create a danger or at least render others on the road more vulnerable.' *Id*. at 1125. Additionally, in *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979), a pre-*DeShaney* case, we required a trial when officers, after arresting the children's uncle, left three children in an abandoned car on the side of the road such that the children had to cross eight lanes of traffic and brave the elements in search of a phone, resulting in the week-long hospitalization of a five-year-old child. *Id*. at 382.

*Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003); *see also Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (state-created danger claim stated where a woman was raped after the officer left her alone, at night, and on foot in high crime area).

Surveying the legal landscape in September 2005, a reasonable officer would have known that the state-created danger theory applied to known or readily foreseeable risks created or exacerbated by a police officer. Surveying the same landscape, a reasonable officer would not have understood that the theory applied to circumstances where an existing but then-unknown

-13-

risk is revealed through the clairvoyance of hindsight. *See Losinski v. Cnty. of Trempealeau*, 946 F.2d 544, 551 (7th Cir. 1991) ("The essence of the Court's exception in *DeShaney* is state creation of dangers faced or involuntary subjection to *known* risks.") (emphasis added). Plaintiff has not cited, and the court has not found, any precedents applying the state-created danger theory in situations analogous to those presented here. And given *Collignon* and *Martin*, Officer Perez cannot have been on notice that due process required him—under circumstances where he had no knowledge of Carlos' suicidal tendencies, and where he released Carlos outside the family home after a minutes-long encounter—to call an ambulance to deal with the risk (then unknown to him) that Carlos might commit suicide. Qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), protects Officer Perez from liability on Plaintiff's state-created danger claim.

## II.    State Law Willful and Wanton Conduct Claim

In addition to her Fourteenth Amendment claim, Plaintiff brings a "willful and wanton conduct" claim under Illinois law. Doc. 35 at ¶¶ 37-44. The Illinois Supreme Court recently reiterated that "[t]here is no separate tort of willful and wanton conduct"; instead, willful and wanton conduct "is regarded as an aggravated form of negligence." *Krywin v Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010) (citing *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994)); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 692 (7th Cir. 2011) ("willful and wanton negligence claim"). That said, for ease of reference, and consistent with common usage, *see, e.g., Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010), Plaintiff's state law claim will be referred to as a "willful and wanton" claim.

A threshold question is whether the court, having disposed of Plaintiff's federal claim, should resolve the state law claim or, rather, dismiss it without prejudice under 28 U.S.C.

§ 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams*, 509 F.3d at 404. This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*. The third exceptions applies here.

Conduct is "willful and wanton under Illinois law if it constitutes 'a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.'" *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (quoting 745 ILCS 10/1-210). The Seventh Circuit has held that "'the willful and wanton [standard] is remarkably similar to the deliberate indifference standard.'" *Williams*, 509 F.3d at 404 (quoting *Chapman*, 241 F.3d at 847). Given this, if summary judgment is warranted on a Fourteenth Amendment deliberate indifference claim, it is equally warranted on a willful and wanton claim resting on the same factual allegations. *See id*. at 404-05 (summary judgment on deliberate indifference claim "is dispositive" of summary judgment on willful and wanton claim); *Chapman*, 241 F.3d at 847 (same); *Wells v. Bureau Cnty.*, 723 F. Supp. 2d 1061, 1088 (C.D. Ill. 2010) (same); *Clara v. City of Chi.*, 2002 WL 1553419, at *11 (N.D. Ill. July 15, 2002) (same). As shown above, Officer Perez is entitled to summary judgment on Plaintiff's deliberate indifference to medical needs claim—not just due to Plaintiff's forfeiture of that claim, but also on the merits. It necessarily follows that Officer Perez also is entitled to summary judgment on the willful and wanton claim.

Plaintiff's failure to establish proximate cause provides an independent ground for summary judgment on the state law claim. (Officer Perez invoked proximate cause only when

addressing the state law claim, which is why the court did not consider proximate cause in resolving the federal claim.) Proximate cause is an element of a willful and wanton claim. *See Abrams v. City of Chi.*, 811 N.E.2d 670, 674 (Ill. 2004). "It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee." *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir. 2009) (internal quotation marks omitted). "This rule carries an exception that deems suicide foreseeable when the defendant's conduct caused an injury, most often to the head, that made the decedent so bereft of reason as to cause him to attempt suicide." *Ibid.* (internal quotation marks omitted); *see also Luss v. Vill. of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. 2007). Plaintiff does not invoke the exception or call for the recognition of any other. Thus, although proximate cause ordinarily presents "a jury question," here proximate cause "is an issue of law properly resolved by [the] court." *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 615 (7th Cir. 2002).

## Conclusion

What happened to Carlos is undeniably a tragedy, and Plaintiff deserves and has the court's sympathy for the loss of her son. But given the undisputed facts of record, Officer Perez cannot be held liable under federal or state law for Carlos' death. Officer Perez accordingly is entitled to summary judgment.

September 30, 2011

_____
United States District Judge